## Case No. 11,934.

### Ex parte ROBINSON.

[1 Bond, 39;[1] 4 Am. Law Reg. 617.]

Circuit Court, S. D. Ohio. April Term, 1856.

HABEAS CORPUS—ACT DONE IN PURSUANCE OF FEDERAL LAW—FUGITIVE SLAVE ACT—VOID PROCEEDINGS.

1. Section 7 of the act of congress of March 2, 1833 [4 Stat. 634], authorizes any judge of the United States to issue the writ of habeas corpus where an officer of the United States is imprisoned "for any act done, or omitted to be done, in pursuance of a law of the United States."

2. It is the proper remedy where a marshal is imprisoned by the sentence of a state judge, as for a contempt in not producing the bodies of certain persons named in a writ of habeas corpus issued by such judge, and if it appears from the evidence that such persons were legally in the custody of the marshal, pursuant to the provisions of the fugitive slave act, and that his refusal to produce them before the state judge was a paramount duty by the terms of the said act, the marshal is entitled to his discharge under said section 7 of the act of 1833.

3. In ordering his discharge upon a habeas, a judge of the United States does not assume a jurisdiction to review or reverse the sentence or judgment of the state judge, but merely exercises a power expressly conferred by an act of congress.

4. Although the authorities are not uniform as to the right of a state judge to issue the writ of habeas corpus, where the imprisonment is under the authority of a law of the United States, it is well settled that when the fact is proved that the imprisonment is under such authority, the jurisdiction of the state judge is at an end, and all subsequent proceedings are coram non judice.

Habeas corpus.

Ketchum & Headington, for the marshal.

Cox & Jolliffe, in opposition to the discharge.

LEAVITT, District Judge. The facts which it is material to notice in the decision of the question before me are, that on the 28th of January last, one Gaines, a citizen of Kentucky, on his affidavit that certain colored persons, owing him service in said state, had escaped to the state of Ohio, obtained a warrant from John L. Pendery, a commissioner of the circuit court of the United States for the Southern district of Ohio, directed to the marshal of said district, requiring him to arrest said persons as fugitives from labor, and have them before said commissioner forthwith; in obedience to which warrant, on the 30th of January, the marshal made return that he had arrested the said persons and had them before said commissioner. On the 9th of February, and while the investigation before the commissioner was pending, he issued his warrant to the marshal, requiring him to commit the alleged fugitives to the jail of Hamilton county for safe keeping, to be produced from time to time, as required;

and they were duly committed to said jail in pursuance of such warrant. On the 21st of February, on the petition of one Jesse Beckley, alleging that said persons were unlawfully detained in custody by the marshal of said district, a writ of habeas corpus was issued by the judge of the probate court of Hamilton county, requiring the marshal to have them before said judge forthwith, with the cause of their caption and detention. On the 28th of February, the commissioner adjudged the said fugitives to be the property of said Gaines, and ordered them to be delivered to him, to be removed to the state of Kentucky. On the same day, the said Gaines made his affidavit that he was apprehensive that said fugitives would be rescued by force, and required that they should be delivered to him in the state of Kentucky by the marshal, pursuant to provisions of the act of congress. They were delivered to the claimant by the marshal, according to said request. On the 27th of February, the marshal appeared before the judge of the probate court of Hamilton county and submitted, by his counsel, a motion to dismiss the writ of habeas corpus issued by said judge, which motion was taken under advisement, and an order was entered by the judge that the marshal should not remove the persons named in the writ from the jurisdiction of the court till the final decision of the motion, which order was served on the marshal on the 28th of February. On the 1st of March, a motion was again made to dismiss the writ of habeas corpus, which was overruled by the probate judge, who entered an order requiring the marshal to make a return of said writ on the 7th of March. And on that day the marshal, protesting against the jurisdiction of the probate judge, made his return to the writ of habeas corpus, in which he set out the proceedings before the commissioner upon the claim of said Gaines, and avers that at the time of the service of the writ of habeas corpus on him he held the persons named in it in his custody, under the order of the commissioner, as before noticed, by virtue of his office as marshal, and by authority of law; and that on the said 27th of February, when he appeared before the probate judge and made his motion to dismiss the writ of habeas corpus, and when the order of that date was made by said judge, as before stated, he held said persons in his custody by virtue of his office as marshal, and by authority of law, and that afterward, upon the demand of said claimant, delivered them to him in the state of Kentucky.

On the 8th of March, the question as to the sufficiency of the marshal's return was argued before the probate judge, who continued the same for advisement till the 18th of March; and on that day decided that said return was insufficient, for the reasons that the persons named in said writ of habeas corpus were not produced before him, and that the marshal, after the service of said

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

writ, and after the order that the persons named therein should not be removed from the jurisdiction of the court, had removed them to the state of Kentucky. The probate judge thereupon adjudged the marshal guilty of a contempt of court, and ordered that proceedings should be instituted against him for such contempt. And on the said 18th of March, specifications were filed against the marshal, embodying the charges for contempt. At the same time a rule was entered requiring the marshal, within two days from the service thereof, to show cause why he should not be attached and punished for such contempt. This rule was served on the marshal, and that officer filed his answer, setting forth that the acts complained of as a contempt of said probate court were done or omitted in the discharge of his duties as marshal of the United States for the Southern district of Ohio, and in pursuance of the laws of the United States: and he again denied the jurisdiction of said court to hold him accountable for said acts. To this answer a replication was filed by the prosecuting attorney of Hamilton county, setting forth that the acts of the marshal were not done or omitted in the discharge of his duties as such officer, nor in pursuance of the laws of the United States. On the same day the probate judge decided the answer of the marshal was insufficient, and adjudged him guilty of a contempt of that court, and ordered that for such contempt he should be fined in the sum of three hundred dollars and costs, and be committed to the jail of Hamilton county. A commitment was immediately issued by the probate court, and pursuant thereto the marshal was seized and lodged in jail. And on the same day the marshal presented his petition to me, setting forth under oath the facts connected with his imprisonment, averring that he was unlawfully detained in custody, and praying for a writ of habeas corpus directed to the sheriff of Hamilton county. The writ was accordingly issued, and has been duly returned by the sheriff; and the marshal, by his counsel, now moves for his discharge from custody.

The habeas corpus in this case, issued pursuant to the seventh section of the act of congress, passed March 2, 1833, which provides "that either of the justices of the supreme court or a judge of any district court of the United States, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases of a prisoner or prisoners in jail or confinement, when he or they shall be committed or confined on or by any authority of law, for any act done or omitted to be done in pursuance of a law of the United States, or any order, process, or decree of any judge or court thereof, anything in any act of congress to the contrary notwithstanding."

It is insisted by the counsel who oppose the discharge of the marshal that this provision of the act of congress applies only to the case of a federal officer who is confined or imprisoned by state authority under an unconstitutional state law; and reference is made to the historical fact that the act of 1833 was passed to meet the then existing exigency growing out of the threatened opposition of one of the states of the Union to the national legislation for the imposition and collection of duties on imports. To this it may be replied that whatever may have been the peculiar circumstances under which the act passed, the section above quoted is still in full force, and obligatory as a law of the United States. And it may be fairly inferred that while its purpose was, at the date of its passage, to provide against a great danger then pending, it has been deemed expedient that it should be continued as a remedy against nullification in any form in which it might be presented. But this point is not now for the first time presented for decision. It has been settled by eminent judges of the highest official position. In the case of Ex parte Jenkins [Case No. 7,259], Judge Grier, of the supreme court of the United States, granted a writ of habeas corpus under the statute referred to, and released the person who applied for it, without the intimation of a doubt as to the authority it conferred. And in the well-known Rosetta Case [Id. 12,064], which occurred about a year since, Judge McLean granted a writ of habeas corpus under the same provision of the statute, and released the marshal from custody under circumstances very similar to those involved in the case now before us.

The only inquiry, therefore, arising in the present case is, whether, from the facts proved, it sufficiently appears that the imprisonment of the marshal was "for any act done or omitted to be done in pursuance of a law of the United States." If this inquiry is answered affirmatively, it will follow that he is entitled to his discharge, as the precise case contemplated by the statute in that event is presented. In the consideration of this question, it is not necessary to inquire whether the probate judge could rightfully issue the writ of habeas corpus; neither is it necessary that this court should assert or exercise a power of revising or reviewing the sentence of the probate judge for the indefinite imprisonment of the marshal for the alleged contempt. Indeed, such a jurisdiction is distinctly disclaimed. But if the conclusion is warranted that the judgment against the marshal was for an act done or omitted, in the discharge of official duties, and under the authority of a law of the United States, an obligation is imposed on me, from which I can not shrink. It has been before stated that the writ of habeas corpus from the probate judge issued the 21st of February, and that the decision of the commissioner, adjudging the fugitives to be the property of the claimant, was made on the 28th of that month. Between these dates the fugitives were in the custody of the marshal, under the process of the commissioner, and it was undeniably his duty to hold them.

subject to the final action of the commissioner. Simultaneously with the decision on the claim of the owner, he made oath, pursuant to the provisions of the ninth section of the act of congress of September 16, 1850 [9 Stat. 465], that he had good reason to apprehend a rescue of the fugitives. This section provides that when such oath is made. "it shall be the duty of the officer making the arrest to retain such fugitive in his custody, and to remove him to the state whence he fled, and there to deliver him to said claimant by his agent or attorney." It is clear, from this provision, that the duty of keeping the fugitive in custody, after the decision of the commissioner, if in favor of the claimant, is as imperative as it is while he holds him under the warrant or order of that officer. With the obligation of this stringent and to him paramount law resting on him, was the marshal bound to obey the process of the probate judge? It would seem there was no intention on the part of the marshal to treat that judge with contemptuous disregard. He first appeared before him, and by his counsel exhibited all the facts as to the apprehension, custody, and disposition of the fugitives, submitting at the same time a motion for the dismissal of the writ of habeas corpus. This motion was overruled, and the marshal was required to make a return to the writ. He then presented an answer, couched in respectful terms, stating the reasons why he could not produce the bodies of the fugitives. Was this in contempt of the authority of the probate judge? The marshal states in his answer, duly sworn to, that in his conduct he was governed by what he regarded his duty under the constitution and laws of the United States. He was an officer appointed under the constitution, which he had sworn to support, and which declares "that this constitution and the laws of the United States, which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution and laws of any state to the contrary notwithstanding." [Const. art. 6.]

Now, if the marshal in good faith, and acting under what he regarded as an imperative obligation resting on him by virtue of a law of the United States, did or omitted to do the acts for which he is imprisoned by the sentence of the probate judge, is he not entitled to be discharged from imprisonment under the express provision of the act of congress before referred to? In the Rosetta Case, before noticed, this same marshal refused to obey a writ of habeas corpus issued by a state judge, commanding him to produce the alleged fugitive before him, on the ground that such fugitive was in his custody under process from a commissioner of the United States court; and for such refusal he was arrested by a warrant issued by the judge as for a contempt. On application to Judge McLean, that learned and distinguished judge issued a habeas corpus to bring the marshal before him, and, after argument and full consideration, discharged him from the custody of the state officer, under the act of congress already quoted. Judge McLean, in his published opinion, says: "The marshal omitted to do the act ordered to be done by the Honorable Judge Parker, because it would be in express violation of his duty under an act of congress. This is literally within the act." With the knowledge of this adjudication, in a case involving the same principle as in the habeas corpus issued by the probate judge, is it strange the marshal should have pursued the same course which had received the sanction of the eminent judge referred to? In the case decided by Judge McLean, the act omitted to be done was the bringing of the alleged fugitive before Judge Parker under a habeas corpus; and in the present case, it is the failure to produce the fugitives named in the habeas corpus before the probate judge. The same principle had been previously settled by the decision of the learned judge, before referred to, in the case of Norris v. Newton [Case No. 10,307]. He says, in the opinion of the court in that case: "I have no hesitation in saying that the judicial officers of a state under its own laws, in a case where an unlawful imprisonment is shown by one or more affidavits, may issue a writ of habeas corpus, and inquire into the cause of detention. But this is a special and limited jurisdiction. If the plaintiff, in the recaption of his fugitive slaves, had proceeded under the act of congress, and made proof of his claim before some judicial officer of Michigan, and procured the certificate which authorized him to take the fugitives to Kentucky, these facts being stated as the cause of detention would have terminated this jurisdiction of the judge under the writ. Thus it would appear that the negroes were held under the federal authority, which, in this respect, is paramount to that of the state. The cause of detention being legal, no judge could arrest and reverse the remedial proceedings of the master." Judge McLean adds: "And the return made by the plaintiff being clearly within the provisions of the constitution, as decided in the case of Prigg v. Pennsylvania [16 Pet. (41 U. S.) 539], and the facts of that return being admitted by the counsel for the negroes, the judge could exercise no further jurisdiction in the case. His power was at an end. The fugitives were in the legal custody of their master, a custody authorized by the constitution, and sanctioned by the supreme court of the Union." And again, in the same case, the learned judge says: "The legal custody of the fugitives by the master being admitted, as stated in the return on the habeas corpus, every step taken subsequently was against law and in violation of his rights."

There is another high authority in support of the position that in cases arising under an

act of congress the power of the federal officers is paramount to that of the states. I refer to the charge of Judge Nelson, of the supreme court of the United States, to the grand jury of the circuit court of the United States for the Southern district of New York, reported in [Fed. Cas. Appendix]. That learned judge, admitting the right of a state judge to issue a habeas corpus for one in custody under federal authority, adds that "when it is shown that the commitment or detainer is under the constitution or a law of the United States, or a treaty, the power of the state authority is at an end, and any further proceeding under the writ is coram non judice and void. In such case, that is, when the prisoner is in fact held under process issued from a federal tribunal under the constitution or a law of the United States, or a treaty, it is the duty of the officer not to give him up, or to allow him to pass from his hands in any stage of the proceedings. He should stand upon his process and authority; and if resisted, maintain them with all the powers conferred upon him for that purpose." Authorities of the same import could be greatly multiplied, but it is unnecessary to adduce more. If judicial decisions are entitled to any consideration, it is clearly established that, though it may be competent for a state judge to issue the writ of habeas corpus in a case of imprisonment under the authority of a law of the United States, when the fact is made known to him, his jurisdiction ceases and all subsequent proceedings by him are void. Is it supposable the marshal was ignorant that the law had been thus settled by some of the ablest judges of the country, and was he guilty of a willful contempt in deferring to these high authorities? He might well conclude that when the probate judge became apprised of the fact that the fugitives were in custody under a law of the United States his jurisdiction ceased, and that the obligation was imperative on him, under no circumstances to permit them to be taken from his custody.

In the case of Ex parte Jenkins, before referred to, Judge Grier uses this language: "Neither can such fugitive, when in custody of the marshal, under legal process from a judge or commissioner of the United States, be delivered from such custody by means of a habeas corpus, or any other process, to answer for an offense against the state, whether felony or misdemeanor, or for any other purpose." There is no doubt as to the result if the marshal had placed these fugitives in the custody of the probate judge, in obedience to the writ of habeas corpus. The opinion of that judge, as published, on the question of the sufficiency of the marshal's return, shows clearly what his action would have been if the marshal had produced the fugitives. In that opinion he held that the proceedings before the commissioner, by which the fugitives were held in custody of the marshal, were unconstitutional and void. Although it was decided by Judge McLean, in the Rosetta Case, that it was competent for congress to vest in commissioners appointed by the circuit courts the powers conferred on them by the act of 1850, and that they could, therefore, legally and constitutionally exercise those powers, and although the same decision had been made by several other judges of the supreme court, the probate judge held otherwise, and that the acts of the commissioner were mere nullities; and it would necessarily result from this decision that the process by which the fugitives had been arrested was void, and that they were illegally in the custody of the marshal. I do not refer to this with any purpose of arraigning the conduct or impeaching the motives of the probate judge, but in proof of the fact that obedience to this writ by the marshal would have resulted in the discharge of the fugitives. In the Rosetta Case, before referred to, the judge held that a state court could not interfere with the officers of the United States in the performance of their duties, under the act of 1850, and that although the fugitive in that case had been discharged by habeas corpus, such discharge was no bar to the subsequent proceedings by the commissioner.

As stated in a previous part of this opinion, I neither assert nor exercise the jurisdiction to review or reverse the action of the probate judge. The authorities to which I have referred have been cited in support of the proposition that the law of the United States, under which the marshal acted, was paramount in its obligation upon him; and that, if that officer is now in custody for obedience to that paramount law, the case is within the express terms of the act of 1833, and he is entitled to his discharge. Williamson's Case [26 Pa. St. 9], decided by the supreme court of Pennsylvania, and relied upon in the argument to prove that the marshal ought not to be discharged on this application, did not present the question arising in this case, and is not, therefore, an authority in point. The facts in the case referred to were, that Williamson had been adjudged guilty of a contempt of the district court of the United States for the Eastern district of Pennsylvania, on an allegation that he had made a false return to a writ of habeas corpus, directed to him by said court. While in confinement, under the judgment of the district court, application was made to the supreme court of the state for his discharge on a habeas corpus. The ground on which the discharge was urged was, that the court by which Williamson was committed had no jurisdiction, and that its sentence was therefore a nullity. The supreme court held that, on general principles, they had no power to inquire into and reverse the judgment of a court of another jurisdiction, and refused to discharge the applicant. The case before me stands on wholly different grounds, and does not raise the question decided by the court

in Pennsylvania. The interposition invoked in behalf of the marshal is, by virtue of a statute of the United States, intended for the express purpose of relieving the officials of the national government from imprisonment for the performance of duties enjoined on them by law. As before remarked, it is solely under this statutory provision that this court can take cognizance of this application and grant the discharge which is sought for.

In attempting to state briefly the conclusions to which I am brought in the consideration of this case, I have not deemed it necessary to notice all the views presented by the counsel resisting the motion for the discharge of the marshal. One of them has insisted, with much zeal and earnestness, that the fugitive slave law, on which proceedings in this case are based, is, in its most essential requirements, unconstitutional and void, and can not, therefore, form the basis of any valid action by any court or officer of the government. I can not take time to examine and refute this position, but will suggest, what will be most obvious to those who view the subject dispassionately, that a proper appreciation of my position and the obligations resting upon me will make its fallacy and unsoundness sufficiently apparent. The act referred to, whatever views may be entertained of its necessity and expediency, is a valid and constitutional law, and as such must be respected and enforced. No judge or other officer of the state or national government, or any citizen of either, so far as the rights of others are concerned, has a right to act on his private and individual views of the policy and validity of laws passed in conformity with the forms of the constitution. Until repealed or set aside by the adjudication of the proper judicial tribunal, they must have the force of laws and be obeyed as such. Any other principle must lead to anarchy in its worst form, and result inevitably in the speedy overthrow of our institutions. The petitioner is discharged.