ANDERSON et al. v. ELLIOTT. Constable, et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 336.

**1. Federal and State Courts—Arrest of Marshal for Executing Process —Habeas Corpus.**

A United States marshal cannot be subjected to arrest and imprisonment by the authorities of a state for acts done pursuant to the commands of a writ issued to him by a court of the United States, but is protected by his process, and, if so arrested, will be discharged by a federal court on habeas corpus.

**2. Same—Judgment of Federal Court—Collateral Attack in State Court.**

A defendant personally served with process in a suit in a federal court to recover land, who makes default, is bound by a judgment therein awarding possession of the land to the plaintiff, and he cannot attack its validity on the ground that the land is situated in another state, and beyond the jurisdiction of the court, where the boundary line between the two states is in dispute, by instituting proceedings in the courts of the state in which he claims to reside, and causing the arrest of the marshal therein for attempting to execute such judgment.

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

Charles Seymour (T. E. H. McCroskey and Norman B. Morrell, on the brief), for appellants.

James H. Merrimon (J. G. Merrimon, on the brief), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

GOFF, Circuit Judge. On the 13th day of July, 1889, in the circuit court of the United States for the Northern division of the Eastern district of Tennessee, Vernon K. Stevenson and others instituted a suit against Tip Lovingood, Ki Woody, Columbus Hoss, Jasper Fain, and William M. Marr, citizens and residents of the county of Monroe, state of Tennessee, and William M. Nixon, a citizen and resident of Hamilton county, Tenn. The object of said suit was to recover the possession of certain tracts of land situated in Monroe county, Tenn. Process was duly issued from the clerk's office of said court on the 13th day of July, 1889, returnable to August rules next following. The marshal returned that he executed the summons on Lovingood, Woody, Hoss, Marr, and Nixon, and that Fain was not to be found in the Eastern district of Tennessee. On the 2d day of September, 1889, the defendants Nixon and Marr filed their disclaimer, denying that they were in possession of the lands mentioned in the plaintiffs' declaration, and renouncing all claim, title, and interest in the same. On January 26, 1892, an order was entered in said cause reciting the service of process on the defendants Lovingood, Woody, and Hoss, their failure to appear and make defense, and directing that as to them the bill be taken for confessed, and the cause be set for hearing ex parte, and that an alias subpoena issue as to the defendant Fain. On the 27th of January, 1892, an-

101 F.—39

other order was duly entered by the court in said cause, of which the following is a part, viz.:

"And it appearing to the satisfaction of the court that subpœna was duly issued against Jasper Fain, one of the defendants in the above-entitled cause, and that the marshal for said district has returned that said Fain is not to be found in this district, it is ordered that said Fain be directed to appear, plead, answer, or demur to the complainants' bill on or before the 1st day of March, 1892, and that copy of this order be served on the said Jasper Fain, if practicable, wherever found, or, if such personal service is not practicable, shall be published for four consecutive weeks in the Madisonville Gazette, a newspaper published at Madisonville, in Monroe county, in said district. And it is further ordered that, in case said Fain does not appear within the time so limited, the court, upon proof of the service or publication of said order, and of the performance of the directions contained therein, will entertain jurisdiction, and proceed to the hearing and adjudication of this suit. in the same manner as if said Fain had been served with process in this district."

On the 25th February, 1892, said court entered another order in said cause, extending the time for the service of process on the defendant Fain, or the making of said publication, until the July term, 1892, of said court. On the 26th of May, 1892, the marshal for the Western district of North Carolina made return that he on that day duly served said process and notice on the said Jasper Fain by reading and delivering a copy in person to him. On the 11th August, 1892, on motion of the plaintiffs, an order was entered in said cause reciting the due service of the summons on all of the defendants, their failure to appear, plead, or demur, and then adjudging that said plaintiffs recover of the defendants Lovingood, Woody, Hoss, Fain, Marr, and Nixon the premises described in the declaration, which were particularly located by metes and bounds. In said order of judgment the court also directed that a writ of possession issue to put the plaintiffs in possession and occupation of the said lands, which were described as situated in Ocoee district, and the records, official survey, and maps of that district of the state of Tennessee were referred to for a further description of said property.

On the 10th day of February, 1893, the writ of possession so authorized was issued and placed in the hands of the marshal of the Eastern district of Tennessee, who made the following return thereon:

"Executed in full, as commanded, as to Tip Lovingood, by removing him from the premises described. and putting the companie in possession through their agent, W. D. Hale, on May 24, 1893; also executed as to Ki Woody and Columbus Hoss, May 25, 1893, in the same manner. The deft. Jasper Fain was permitted to remain through said agent, Mr. Hale, under an agreement between them. The defts. William M. Nixon and William M. Marr were not to be found in possession or on any portion of said lands, and nothing was done to them."

On the 10th day of February, 1894, an alias writ of possession was awarded by said court, the object of which was to put said plaintiffs in full possession of the lands described. This alias writ was duly issued on the 21st day of April, 1899, and was in the hands of the marshal of the Eastern district of Tennessee for execution, when one D. W. Deweese, a justice of the peace of Cherokee county, in the state of North Carolina, issued his warrant for the arrest of Murphy J. Anderson, W. N. Barr, G. W. Metcalfe, and Joe Garrett (the deputy

marshal and the posse with him), who were endeavoring to place the plaintiffs in the possession of said land, as the writ authorized them to do. The charge against them was described in said warrant "as unlawful and malicious trespass," a proceeding founded on a statute of the state of North Carolina. The "unlawful and malicious trespass," so charged, consisted of the means taken by the deputy marshal and those summoned to assist him in executing said writ, and in placing the plaintiffs in said suit in the possession of the land as decreed to them by said court. The affidavit on which the warrant was issued was made by one A. A. Fain, who claimed to be a tenant in common with said Jasper Fain and others of the land in controversy, and who charged said deputy marshal and his assistants with committing a trespass on the land when they entered upon it for the purpose of removing said Jasper Fain and his personal property therefrom. The warrant was executed by J. N. Elliott, a constable of Cherokee county, N. C., who arrested Murphy L. Anderson, the deputy marshal, and W. N. Barr and G. W. Metcalfe, two of the parties summoned to assist him, and removed them to Murphy, in said county of Cherokee, where they were delivered to said justice and held in custody. While they were so held as prisoners, they were again arrested by the sheriff of said county, on a warrant issued by the same justice of the peace, in which they were charged with assaulting the said Jasper Fain with deadly weapons, and with imprisoning him without authority of the law; and also at the same time they were served by said sheriff with process in a civil suit instituted by said Fain, in which he claimed $10,000 damages for false imprisonment. On May 2, 1899, while they were so in the custody of said officers, who claimed to be acting under the authority of the statutes of North Carolina, the said Murphy L. Anderson, W. N. Barr, and G. W. Metcalfe presented their petition to the circuit court of the United States for the Western district of North Carolina, praying that the writ of habeas corpus might issue, directed to said sheriff and constable, and, as they alleged their unlawful detention, they asked that they might be discharged from arrest. The writ issued on that day, and came on regularly to be heard, on consideration whereof the court below, on the 20th day of May, 1899, denied the prayer of the petitioners, and remanded them to the custody of said officers of the state of North Carolina. From that action of the court below, this appeal was asked for and obtained.

Section 753 of the Revised Statutes of the United States is as follows:

"The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof; or is in custody in violation of the constitution or of a law or treaty of the United States; or, being a subject or citizen of a foreign state, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations; or unless it is necessary to bring the prisoner into court to testify."

. It follows, therefore, that if the petitioners were so held by said officers because of an act done by them in pursuance of a valid decree of the circuit court of the United States for the Northern division of the Eastern district of Tennessee, then they should have been discharged. That the suit mentioned by the petitioners, styled "Stevenson et al. v. Lovingood et al." (a certified copy of the record was filed as an exhibit with the petition), was duly filed in the said circuit court of the United States in the state of Tennessee is without question. All of the defendants to said suit were duly served with process within the district where the suit was brought and in which they resided, except Jasper Fain. As to him service was made under the provisions of section 8 of the judiciary act of March 3, 1875 (chapter 137, 18 Stat. 470). The defendants were all regularly summoned to appear, and ample time was given them, as required by law and the practice thereunder, in which to plead, and take all proper steps to protect their interests, as the same were affected by said writ. The said defendant Fain, after he was served with the notice of the pendency of the suit, and of the order of the court that he appear and plead, failed to do so, and permitted judgment to be entered against him. After that, when the first writ of possession was in the hands of the marshal for execution, he entered into an agreement with an agent of the plaintiffs, under and by which he was permitted to remain for a certain time on the premises in controversy. Subsequently, after the second writ of possession had been issued by the special order of the court, he resisted its execution, and now claims that said court did not have jurisdiction over the land in controversy. It appears from the evidence that for some years past a controversy has existed, at the point where said land is located, as to the true boundary line between the states of North Carolina and Tennessee, and it seems that the authorities of both of those states have claimed and exercised authority and jurisdiction over the land in controversy. The plaintiffs in said suit claimed title to the land under grants issued by the state of Tennessee, and in their bill they alleged that it was located within the boundaries of that state, and that it was within the jurisdiction of the United States circuit court for the Northern division of the Eastern district of that state. That court found as a matter of fact that the land was within its jurisdiction, and decreed that the plaintiffs were entitled to the possession of the same. It is needless, so far as the questions now at issue are involved, for us to consider the character of said suit, whether it was instituted on the equity or the law side of the court, and whether or not the proceedings therein were regularly conducted, for the reason that, so far as the parties now before us are concerned, they are bound by the decree rendered therein. Clear it is that said court has jurisdiction of such suits,—a jurisdiction expressly granted by statute,—and equally clear is it that all the parties to the controversy were regularly before it. The defendants to the suit could have made the defense before that court which they desire now to make in this proceeding,—that is, that the land as a matter of fact is situated in North Carolina, and not in Tennessee,—but for reasons of their own they failed to do so, and they will not now be permitted to raise that ques-

tion. In the matter now before us we will not consider the testimony relating to the true line of boundary between the states of Tennessee and North Carolina; for it is sufficient for us in this proceeding to know that a court of competent jurisdiction, in disposing of the land mentioned, located it in the state of Tennessee, and directed that the possession of the same be delivered to the plaintiffs in the suit it was deciding. It does not appear that the petitioners, in the discharge of their duties relating to the execution of the writ of possession, did more than was proper, under the circumstances and the requirements of the law, they should have done. The defendant Fain, in resisting the execution of the writ, placed himself in the wrong, and thereby made it necessary to use force in ejecting him. To permit the marshal and his deputies to remain in the custody of the officials of Cherokee county, N. C., on the warrants mentioned, will be to punish them for the faithful discharge of their duties, and to invite the opposition of disappointed litigants to the enforcement of the judgments of the courts of the United States in that locality. While it is undoubtedly true that the writ of habeas corpus will not be issued, as a matter of course, concerning arrests made under the laws of the states, still the power exists in the circuit courts of the United States to issue said writ, if the facts of the particular case submitted render it proper so to do. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; In re Wood, 140 U. S. 278, 11 Sup. Ct. 738, 35 L. Ed. 505; In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793, 37 L. Ed. 653; New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30, 39 L. Ed. 80. The circumstances of this case, as shown by the record, bring it clearly within the rule laid down by the supreme court in the cases cited, and not only justify, but require, the discharge of the petitioners. To do otherwise would be to establish a practice under which the jurisdiction of the federal courts and the personal freedom of their officers would be relegated entirely to the decision and custody of the courts of the states. Under such practice it would be possible to review all the judgments rendered by the courts of the United States by simply raising the question of jurisdiction in the courts of the different states. A rule by which such a result could be accomplished would not only render the courts of the United States useless, but would in a short time destroy the government by which they were established. Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L. Ed. 97; McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390.

The defendant Fain, who was properly before the circuit court of the United States for the Eastern district of Tennessee, as a defendant in said case instituted by Stevenson and others, and who was at his own request at one time left in possession of a part of the land in controversy, should have appealed to the proper appellate tribunal from the judgment of said court, if convinced that it was erroneous, and not have resisted its execution by force and by procuring the ar-

rest of the officers sent to execute it. The case was pending in a court of the United States having jurisdiction of the subject-matter of the suit, and it should not in any way, by any of the parties to it, have been transferred to another jurisdiction, by either a civil or criminal proceeding. On this point the supreme court of the United States has directed the mode of procedure in cases where there is any conflict between the courts of the United States and of any of the states. In Tarble's Case, 13 Wall. 397, 20 L. Ed. 597, Mr. Justice Field, in delivering the opinion of the court, said:

"And the powers of the general government and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other within their respective spheres. And the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a state judge or a state court as if the line of division was traced by landmarks and monuments visible to the eye. And the state of Wisconsin had no more power to authorize these proceedings of its judges and courts than it would have had if the prisoner had been confined in Michigan, or any other state of the Union, for an offense against the laws of the state in which he was imprisoned. It is in the consideration of this distinct and independent character of the government of the United States from that of the government of the several states that the solution of the question presented in this case, and in similar cases, must be found. There are within the territorial limits of each state two governments, restricted in their spheres of action, but independent of each other, and supreme within their respective spheres. Each has its separate departments, each has its distinct laws, and each has its own tribunals for their enforcement. Neither government can intrude within the jurisdiction, or authorize any interference therein by its judicial officers with the action, of the other. The two governments in each state stand in their respective spheres of action in the same independent relation to each other, except in one particular, that they would if their authority embraced distinct territories. That particular consists in the supremacy of the authority of the United States when any conflict arises between the two governments. The constitution, and the laws passed in pursuance of it, are declared by the constitution itself to be the supreme law of the land, and the judges of every state are bound thereby, 'anything in the constitution or laws of any state to the contrary notwithstanding.' Whenever, therefore, any conflict arises between the enactments of the two sovereignties, or in the enforcement of their asserted authorities, those of the national government must have supremacy, until the validity of the different enactments and authorities can be finally determined by the tribunals of the United States. This temporary supremacy until judicial decision by the national tribunals, and the ultimate determination of the conflict by such decision, are essential to the preservation of order and peace, and the avoidance of forcible collision between the two governments. 'The constitution,' as said by Chief Justice Taney, 'was not framed merely to guard the states against danger from abroad, but chiefly to secure union and harmony at home; and to accomplish this end it was deemed necessary, when the constitution was framed, that many of the rights of sovereignty which the states then possessed should be ceded to the general government, and that, in the sphere of action assigned to it, it should be supreme, and strong enough to execute its own laws by its own tribunals, without interruption from a state or from state authorities.' And the judicial power conferred extends to all cases arising under the constitution, and thus embraces every legislative act of congress, whether passed in pursuance of it or in disregard of its provisions. The constitution is under the view of the tribunals of the United States when any act of congress is brought before them for consideration."

The contention of the respondents that the petitioners were trespassers, because they were enforcing a judgment beyond the limits of the jurisdiction of the court that rendered it, is without merit; for

it is plain that, even if there was error in the conclusion reached by the court, still it was, under the circumstances, binding on the parties to said suit until reversed by an appellate tribunal. No appeal was taken, and the judgment cannot be questioned by the parties of record in a proceeding growing out of the effort to enforce it.

The cases are many in which the courts of the United States have promptly discharged from the custody of the officers of the states the federal officials who have been arrested by them, when such officials were engaged in the discharge of their duties under the laws of the United States. A few of them are here referred to as showing the course proper to be followed in cases of the character of the one we now dispose of. Ex parte Jenkins, 2 Wall. Jr. 521, Fed. Cas. No. 7,259; Ex parte Robinson, 6 McLean, 355, Fed. Cas. No. 11,935; Ex parte Robinson, 1 Bond, 39, Fed. Cas. No. 11,934; In re McDonald, 9 Am. Law Reg. 661, Fed. Cas. No. 8,751; U. S. v. Jailer of Fayette County, 2 Abb. (U. S.) 265, Fed. Cas. No. 15,463; Ramsey v. Jailer of Warren Co., 2 Flip. 451, Fed. Cas. No. 11,547; In re Neill, 8 Blatchf. 156, Fed. Cas. No. 10,089; Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Ex parte Bridges, 2 Woods, 428, Fed. Cas. No. 1,862.

We are of opinion that the petitioners were not only authorized, but that it was their duty, to eject the defendant Fain from the land described in the writ of possession as located in the state of Tennessee, and that in doing so they were fully protected by said writ. While at one time there was considerable conflict in the courts as to the extent of protection afforded to ministerial officers, acting under authority of the orders of courts invested by law with the right to pass upon particular cases and render judgment therein, it is now no longer an open question, and such officers, acting under such orders, are fully protected thereby; and this, even though error was committed by the court in entering the judgment. Erskine v. Hohnbach, 14 Wall. 613, 20 L. Ed. 745; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Stutsman County v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018. The decree appealed from will be reversed, and this cause will be remanded to the court below, with directions that judgment be entered discharging the petitioners from the custody of J. N. Elliott, constable, and A. J. Martin, sheriff, of Cherokee county, N. C. Reversed.