### BABCOCK LUMBER & LAND CO. v. FERGUSON et al.

(District Court, W. D. North Carolina. June 29, 1917.)

1. JUDGMENT ⊂⊃660—ERRONEOUS JUDGMENT—CONCLUSIVENESS.

In a suit to remove a cloud from complainant's title to land alleged to be within the Eastern District of Tennessee, defendants, claiming under a grant from the state of North Carolina, by plea in abatement and answer raised the issue that the land was situated in North Carolina, and this issue was decided against them. Subsequently a petition for a bill of review on the ground that undoubted testimony had been discovered that the land was in North Carolina was denied, and the decree affirmed by the Circuit Court of Appeals and the Supreme Court. *Held*, that the decree confirmed complainant's title to the land, though the land was east of the line subsequently established by the Supreme Court as the true line between the two states.

2. JUDGMENT ⊂⊃17(3)—PROCESS TO SUPPORT—SUBSTITUTED SERVICE.

Where a decree was entered by default in the District Court for the Eastern District of Tennessee, after substituted service in North Carolina upon a resident of that state, who failed to appeal or plead, he was bound by the judgment.

3. QUIETING TITLE ⊂⊃7(2)—CLOUD ON TITLE—INSTRUMENTS CONSTITUTING CLOUD.

A deed from those claiming title to land which was declared void in a prior suit was a cloud upon the title to the land which should be removed.

4. ADVERSE POSSESSION ⊂⊃100(1)—EXTENT OF POSSESSION—EXTENDING POSSESSION TO BOUNDARIES.

A complainant in possession of all lands within a common boundary described in the bill in a suit in which his title was confirmed was in possession of the whole of the land within such boundary, unless an adverse possession to some designated part or parts had intervened, though the land consisted of several distinct parcels, each claimed by one of several adverse claimants.

5. ADVERSE POSSESSION ⊂⊃74—COLOR OF TITLE—DECREE CONFIRMING TITLE.

A decree purporting to confirm complainant's title to land in a suit to remove a cloud and successive deeds from those claiming under such decree were color of title, and uninterrupted possession thereunder for more than seven years gave title, even though the decree did not operate to confirm the title.

6. INFANTS ⊂⊃24—ADVERSE POSSESSION—SUSPENSION BY INFANCY.

Where limitations had begun to run in favor of one in the adverse possession of land while a claimant of the land was living, the latter's death and the minority of his heirs did not affect the operation of the statute.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Babcock Lumber & Land Company against J. W. Ferguson and another. Decree for complainant.

Merrimon, Adams & Adams, of Asheville, N. C., for plaintiff.

F. A. Sondley and M. W. Brown, both of Asheville, N. C., for defendants.

BOYD, District Judge. The facts in this case are substantially these: The complainant in this case derives title under the decree in the Hebard Case, hereafter referred to, in the following manner: That is, Hebard sold and conveyed by deed the lands involved in the Tennessee suit to P. C. Blaisdell and others, on the 16th day of July, 1900; P. C. Blaisdell et al. sold and conveyed the lands to the Smoky Mountain Land & Lumber Company on the 28th day of January, 1901; and the last-named sold and conveyed them by deed to the Babcock Lumber & Land Company, the present complainant, on the 8th day of May, 1907.

Charles Hebard filed a bill in equity against D. W. Belding and others, in the Circuit Court of the United States for the Eastern District of Tennessee, on the 16th of January, 1896. Among the defendants named in the bill was R. L. Cooper, of Cherokee county, N. C. Cooper was served with subpoena on the 30th day of March, 1896, under the provisions of the act of Congress authorizing substituted service. He failed to appear and answer, and a decree pro confesso against him was taken on the 14th day of August, 1896.

The purpose of Hebard's bill was to remove cloud from title to about 40,000 acres of lands alleged in the bill to be located in the Eastern District of Tennessee. Included within this 40,000 was 640 acres which was claimed by R. L. Cooper by virtue of grant No. 8573, issued by the state of North Carolina on May 26, 1888, and this last is the tract involved in this controversy, and which J. W. Ferguson and J. C. Blanchard claim to have purchased and to have title therefor at the time of the bringing of the present suit. There were a number of small tracts or parcels of land claimed by various persons defendants, included within a common boundary of the land of which Hebard alleged that he was owner and in possession.

A final decree was entered in the cause on the 10th day of June, 1899, in which it was decided by the court that Hebard was the owner of the land within the boundary alleged, that he was is possession of the same, and that the several titles or interests claimed by the defendants were invalid and void, among such titles being the grant to R. L. Cooper.

In the suit the location of the line between North Carolina and Tennessee was in controversy, made so by the averments in the bill; but on the 9th of March, 1898, a plea in abatement was overruled, and then the issue was raised by the answer of one or more defendants, particularly in that of J. W. Cooper, who was the father of R. L. Cooper, and who also set up a claim to some part of the lands described in the bill. But the court held that the lands described in Hebard's bill were in the state of Tennessee, and, as before stated, decreed Hebard the owner and in possession, and that the claims of the defendants were void.

In 1909 a petition was filed in the Circuit Court of the United States for the Eastern District of Tennessee, praying for a bill of review, assigning especially as a basis for the prayer that undoubted testimony had been discovered after the entry of the decree showing that the true line between the states of North Carolina and Tennessee was farther west than Hebard's bill represented.

In the meantime, in 1904, R. L. Cooper had died leaving a widow and two minor children, but the latter were made parties to the petition by next friend. Pending this proceeding W. R. Hopkins and others became interested as owners of the lands claimed by the defendants in the original bill, and the Smoky Mountain Lumber Company became a party by reason of having purchased the lands embraced in the original bill, or at least a part of the same, from Hebard, in which purchase was included the tract now in controversy.

Finally leave to file a bill of review was denied by the trial court on the 8th of September, 1909, and in a case stated, in Equity, D. W. Belding, M. M. Belding, A. N. Belding, Henry Stix, Nathan Stix, and others against Chas. Hebard, and in a case stated, William R. Hopkins and others against Chas. Hebard, an appeal from the decision of the court denying leave to file a bill of review was taken to the United States Circuit Court of Appeals for the Sixth Circuit on the 29th of October, 1909.

The principal basis, as before stated, upon which the bill of review was sought and insisted upon was "that the newly discovered evidence showed that the lands claimed by the complainant in the original case were to the east of the true boundary line between the states of North Carolina and Tennessee, and within the state of North Carolina, and not within the boundaries of the state of Tennessee, and for this reason the Circuit Court of the United States for the Eastern District of Tennessee was without jurisdiction over the said land or to determine the title thereto." Upon this appeal the Circuit Court of Appeals affirmed the ruling of the trial court (194 Fed. 301, 114 C. C. A. 261), and thereupon the case was carried to the Supreme Court of the United States, which latter court at October term, 1914, affirmed the decision of the Circuit Court of Appeals (235 U. S. 287, 35 Sup. Ct. 26, 59 L. Ed. 232); and at the said term the case instituted by the state of North Carolina against the state of Tennessee, having for its purpose the definite determination and settlement of the true line between the two states, was determined (235 U. S. 1, 35 Sup. Ct. 8, 59 L. Ed. 97), locating the true line between the states farther west, so as to leave a part, if not all, of the lands involved in the original Hebard bill on the North Carolina side of the line, and within this part was included the tract claimed by R. L. Cooper, and which is the subject of the present controversy.

[1] Upon these facts the court here is called upon to determine whether or not the decree in the Hebard Case in the United States Circuit Court for the Eastern District of Tennessee had the effect to confirm the title of Hebard to the land described in his bill; notwithstanding, it was afterwards ascertained, when the true line between the states of North Carolina and Tennessee was established, that a

part of the lands were in North Carolina, and particularly, as before stated, that part of it now in controversy here.

After mature consideration, I have come to the conclusion that under the law as declared by the Circuit Court of Appeals in this circuit, in the case of Anderson et al. v. Elliott, 101 Fed. 609, 41 C. C. A. 521, the complainant is the owner of the Cooper tract, and that defendants, who claim under R. L. Cooper, are estopped by the Hebard decree to deny complainant's title. In that case Stevenson and others, in a suit against Lovingood and others, brought in the Circuit Court of the United States for the Eastern District of Tennessee, obtained judgment for the possession of certain lands alleged to be situated in Monroe county, Tenn. Among the defendants was Jasper Fain, whom it was afterwards discovered lived in Cherokee county. He was brought into court by substituted process, under the provisions of the act of Congress of March 3, 1875, c. 137 (18 Stat. 470), but he did not appear or file answer or other pleading. The case proceeded to judgment, and the plaintiff was declared to be the owner of the lands described in the pleadings, and the claims of title set up by defendants were declared invalid. The land which Fain claimed and which was involved in the suit turned out, upon a settlement of the true line between North Carolina and Tennessee, which took place after the judgment in the suit referred to above, to be in North Carolina. Execution was issued to dispossess Fain, and the marshal for the Eastern District of Tennessee proceeded with the process for the purpose of ousting him; but when he went to the premises of Fain he agreed to vacate later on if he was allowed to remain undisturbed at that time. After that Fain declined to vacate, and the marshal, with a posse, came again with the writ of possession, and went upon the lands for the purpose of executing it, when Fain caused him and his posse to be arrested upon a warrant issued by a justice of peace of Cherokee county, for, as was charged in the warrant, unlawful and malicious trespass, a proceeding founded upon a statute of the state of North Carolina. The offense alleged against the officers was based on the fact that they went upon the lands for the purpose of executing a writ issued from the state of Tennessee.

When under arrest these officers sued out a writ of habeas corpus from the judge of the United States District Court for the Western District of North Carolina, who upon a hearing refused to discharge them, and an appeal was taken to the Circuit Court of Appeals for the Fourth Circuit, where the decision of the District Judge was reversed, and the petitioners for the habeas corpus discharged. The opinion in this case, which is Anderson et al. v. Elliott, reported in 101 Fed. 609, 41 C. C. A. 521, particularly decides the principal question in the case now in hand. The second paragraph of syllabus reads as follows:

"A defendant personally served with process in a suit in a federal court to recover land, who makes default, is bound by a judgment therein awarding possession of the land to the plaintiff, and he cannot attack its validity on the ground that the land is situated in another state, and beyond the jurisdiction of the court, where the boundary line between the two states is in dispute, by instituting proceedings in the courts of the state in which he claims to reside, and causing the arrest of the marshal therein for attempting to execute such judgment."

His honor, Judge Goff, then the presiding judge of the Circuit Court of Appeals for the Fourth Circuit, delivering the opinion, in the course of it, uses the following language:

"It appears from the evidence that for some years past a controversy has existed, at the point where said land is located, as to the true boundary line between the states of North Carolina and Tennessee, and it seems that the authorities of both of those states have claimed and exercised authority and jurisdiction over the land in controversy. The plaintiffs in said suit claimed title to the land under grants issued by the state of Tennessee, and in their bill they alleged that it was located within the boundaries of that state, and that it was within the jurisdiction of the United States Circuit Court for the Northern Division of the Eastern District of that state. That court found, as a matter of fact, that the land was within its jurisdiction, and decreed that the plaintiffs were entitled to the possession of the same. It is needless, so far as the questions now at issue are involved, for us to consider the character of said suit, whether it was instituted on the equity or the law side of the court, and whether or not the proceedings therein were regularly conducted, for the reason that, so far as the parties now before us are concerned, they are bound by the decree rendered therein. Clear it is that said court has jurisdiction of such suits—a jurisdiction expressly granted by statute—and equally clear is it that all the parties to the controversy were regularly before it. The defendants to the suit could have made the defense before that court which they desire now to make in this proceeding—that is, that the land as a matter of fact is situated in North Carolina, and not in Tennessee—but for reasons of their own they failed to do so, and they will not now be permitted to raise that question."

As I see it, the decision of the Supreme Court in the case of North Carolina v. Tennessee, 235 U. S. 1, 35 Sup. Ct. 8, 59 L. Ed. 97, whilst not deciding the point directly, re-enforces and gives strength to the foregoing quotations from the opinion in Anderson et al. v. Elliott; for as stated in the facts, at the same term of the Supreme Court at which the state line case was decided, the petition for review in the Hebard Case was pending on appeal from the Circuit Court of Appeals for the Sixth Circuit, and the decision of the Court of Appeals denying leave to file a bill of review was affirmed. In the concluding paragraph, in the latter case, Mr. Justice McReynolds, who delivered the opinion of the court says:

"Notwithstanding our conclusion in the proceeding between the states of North Carolina and Tennessee, where the established facts in respect to the location of the dividing line were for the most part the same as those disclosed in the record now before us, we think the decree of the Circuit Court of Appeals was right, and it is accordingly affirmed."

In the course of the hearing of the present case, the question was raised by the defendants as to the validity of what is known as substituted service of process from the federal courts. I think that the case of Anderson et al. v. Elliott, supra, settles that question also, at least as to this circuit; for in the opinion will be found the following:

"All of the defendants to said suit were duly served with process within the district where the suit was brought and in which they resided, except Jasper Fain. As to him service was made under the provisions of section 8 of the judiciary act of March 3, 1875 (chapter 137, 18 Stat. 470 [Comp. St. 1916, § 1039]). The defendants were all regularly summoned to appear, and ample time was given them, as required by law and the practice thereunder, in which to plead, and take all proper steps to protect their interests, as the same were affected by said writ."

[2] I go further, and say that, taking the law as I understand it to be declared in the case of Anderson et al. v. Elliott, that where a decree was entered by default in Tennessee, after substituted service upon the defendant who fails to appear or to plead and permits judgment by default, he is thereafter bound by such judgment.

[3] Adopting this view, the decree in the Hebard Case puts an end to the North Carolina grant to Cooper, under which the defendants in the present case claim; and in view of the fact that the defendants here hold a deed from those claiming title under the North Carolina grant, which was declared void in the Hebard Case, I am of the opinion that this deed, so derived, itself constitutes a cloud upon complainant's title which should be removed, and that the deed held by defendants should be delivered up to be canceled.

[4] Now, coming to the question of possession which has entered into this case. It was ascertained as a fact, and so declared by the Circuit Court of the Eastern District of Tennessee in the Hebard Case, that the complainant was the owner and in possession of all of the lands within a common boundary set out in the bill. The court must necessarily have taken this view, otherwise a bill to remove cloud from title would not have been sustained. The complainant, therefore, being in the possession within a common boundary surrounding the entire land, was in the possession of it in its entirety, or, in other words, was in possession of the whole of it, unless an adverse possession of some designated part or parts of it had intervened. The mere fact that there are several distinct parcels, each claimed by one of several defendants, would not affect, in my opinion, the question. If this be true, then the possession of the whole body of land of which Hebard was declared to be the owner began at least as far back as the entry of the final decree in the Hebard Case, which was in 1899.

[5] I find no sufficient evidence to warrant the conclusion that this possession beginning at that time has been interrupted. The Hebard decree, even if it did not confirm title to the lands, I think was color of title; and it is my view of the law, further, that the successive deeds from Hebard to Blaisdell, from Blaisdell to the Smoky Mountain Land & Lumber Company, and from the latter to the present complainant, are all color of title, and the possession under these instruments beginning, as stated, at the time of the decree, and continuing uninterruptedly for more than seven years from the beginning of the possession to the bringing of this suit, that the title of the complainant had by law ripened when the bill was filed.

[6] The point is made that when R. L. Cooper died his children and heirs at law were minors, and that the statute of limitations would not run as against them; but the statute having begun to run at the time of the entry of the Hebard decree, whilst Cooper was living, then the fact of his death, and that his heirs were minors, would not affect its operation—in other words, that it would continue notwithstanding such intervention.

If the views expressed are consistent with the law, then the complainant would be the owner of the lands in controversy whether the Hebard decree confirmed title or not, and the bill in the present case

alleges actual possession on the part of complainant, and the answer of the defendants, as I construe it, practically admits that averment. So that in any view of it, according to the law as I understand it, I am constrained to hold that the complainant is the owner and in possession of the land in controversy, and that defendants' claim to title is fictitious and void; therefore it is declared by the court now to be a cloud upon complainant's title.

A decree will be drawn in accordance with the views herein expressed.