Marshall, Ch. J.,
 

 delivered the opinion of the court. — This is a bill filed by the state of New Jersey against the state of New York, for the purpose of ascertaining and settling the boundary between the two states.
 

 The constitution of the United States declares, that “the judicial power shall extend to controversies between two or more states.” It also declares, that “ in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction.” Congress has passed no act for the special purpose of prescribing the mode of proceeding in suits instituted against a state, or in any suit in which the supreme court is to exercise the original jurisdiction conferred by the constitution. The act to establish the judicial
 
 *185
 
 courts of the United States, § 13, enacts, “that the supreme court shall have exclusive jurisdiction of all controversies of a civil nature, where a state is a party, except between a state and its citizens; and except also, between a state and citizens of other states or aliens ; in which latter case, it shall have original, but not exclusive jurisdiction.” It also enacts, § 14, “that all the before-mentioned courts of the United States shall have power to issue writs of
 
 scire facias, habeas corpus,
 
 and all other writs not specially provided by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law.” By the 17th section, it is enacted, “that all the said courts of the United States shall have power “to make and establish all necessary rules for the ordinary conducting business in the *said courts, provided such r*„So rules are not repugnant to the.laws of the United States.” “An act ' to regulate processes in the courts of the United States ” was passed at the same session with the judiciary act, and was depending before congress at the same time. It enacts, “all writs and processes issxxing from the supreme or a circuit court shall bear teste,” &c. This act was rendered perpetual in 1792. The first section of the act of 1792 repeats the provisioxx respecting .writs and px-ocesses, issuing from the supreme or a circuit court. The second continues the form of writs, &c., and the forms and modes of proceeding in suits at common law, presci-ibed in the original acts, and in those of equity, and in those of admiralty and maritime jui-isdiction, according to the principles, rules and usages which belong to coux-ts of equity and to courts of admiralty, respectively, as contx-adistinguished from coux-ts of common law.; except so far as may have been provided for by the act to establish the judicial courts of the United States : subject, however-, to such alterations and additions as the said courts, respectively, shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think pi-opei-, from time to time, by rule, to presci-ibe to any circuit or distx-ict court concerning the same.
 

 At a very early period in our judicial history, suits were instituted in this court against states ; and the questions concerning its jui-isdiction and mode of proceeding were necessax-ily considered. So eax-ly as August 1792, an injunction was awax-ded, at the px-ayer of the state of Georgia, to stay a sum of money recovered by Brailsford, a British subject, which was claimed by Georgia, under her acts of confiscation. This was an exei-cise of the original jurisdiction of the court, and no doubt of its propriety was ever expressed. In February 1793, the case of
 
 Oswald
 
 v.
 
 State of New York
 
 came on. This was a suit at common law. The state not appearing on the x-eturn of the process, proclamation was made, and the following order entex-ed by the coux-t: “ Unless the state appear by the fix-st day of the next tex-m, or show cause to the contrary, judgmexxt will be entered by default against the said state.” ;|:At the same term, the case of
 
 Chisholm's Executors
 
 v.
 
 St
 
 ate
 
 of Georgia
 
 came on, and was ai-gued for the plaintiffs, by the then *- J attorney-genex-al, Mr. Randolph. The judges delivex-ed their opinions
 
 seriatim;
 
 and those opinions bear ample testimony to the profound consideration they had bestowed on evex-y questioix arising- in the case. Mr. Chief Justice Jay, Mr. Justice Cushing, Mi-. Justice Wilson, and Mr. Justice Blair, decided in favor of the jurisdiction of the court; and that the process served, on the governor and attorney-general of the state was
 
 *186
 
 sufficient. Mr. Justice Iredell thought an act of congress necessary to enable the court to exercise its jurisdiction. After directing the declaration to be filed, and copies of it to be served on the governor and attorney-general of the state of Georgia, the court ordered, “that unless the said state shall either in due form appear, or show cause to the contrary in this court, by the 1st day of the next term, judgment by default shall be entered against the said state.” In February term 1794, judgment was rendered for the plaintiff, and a writ of inquiry was awarded, but the 11th amendment to the constitution prevented its execution.
 

 Grayson
 
 v.
 
 State of
 
 Virginia, 3 Dall. 320, was a bill in equity. The
 
 subpoena
 
 having been returned executed, the plaintiff moved for a
 
 distringas,
 
 to compel the appearance of the the state. The court postponed its decision on the motion, in consequence of a doubt, whether the remedy to compel the appearance of the state should be furnished by the court itself, or by the legislature. At a subsequent term, the court, “ after a particular examination of its power,” determined, that though “the general rule prescribed the adoption of that practice which is founded on the custom and usage of courts of admiralty and equity,” “still it was thought, that we are also authorized to make such deviations as are necessary to adapt the process and rules of the court to the peculiar circumstances of this country, subject to the interposition, alteration and control of the legislature. We have, therefore, agreed to make the following general orders : “ 1. Ordered, that when process at common law or in equity shall issue against a state, the same shall be served upon the governor or chief executive magistrate, and the attorney-general of such state. * 2. Ordered, that the process of
 
 subpoena
 
 *290] issuing out of this court, in any suit in equity, shall be served on the defendant, sixty days before the return-day of the said process
 
 ;
 
 and further, that if the defendant, on such service of the
 
 subpoena,
 
 shall not appear at the return-day contained therein, the complainant shall be at liberty to proceed
 
 ex parte."
 
 3 Dall. 320.
 

 In
 
 Huger
 
 v.
 
 State of South Carolina,
 
 the service of the
 
 subpoena
 
 having been proved, the court determined, that the complainant was at liberty to proceed
 
 exparrte.
 
 He accordingly moved for and obtained commissions to take the examination of witnesses in several of the states. 3 Dall. 371.
 
 Fowler v. Lindsey,
 
 and
 
 Fowler
 
 v.
 
 Miller,
 
 3 Dall. 411, were ejectments depending in the circuit court for the district of Connecticut, for lands over which both New York and Connecticut claimed jurisdiction. A rule to show cause why these suits should not be removed into the supreme court by
 
 certiorari,
 
 was discharged, because a state was neither nominally nor substantially a party. No doubt was entertained of the propriety of exercising original jurisdiction, had a state been a party on the record. In consequence of the rejection of this motion for a
 
 certiorari,
 
 the state of New York, in August term 1799, filed a bill against the state of Connecticut (4 Dall. 1), which contained an historical account of the title of New York to the soil and jurisdiction of the tract of land in dispute ; set forth an agreement of the 28th of November 1783, between the two states, on the subject; and prayed a discovery, relief and injunction to stay the proceedings in the ejectments depending in the circuit court of Connecticut. The injunction was, on argument, refused, because the state of New York was not a party to the ejectments, nor interested in their decision.
 

 
 *187
 
 It has, then, been settled by our predecessors, on great deliberation, that this court may exercise its original jurisdiction in suits against a state, under the authority conferred by the constitution and existing acts of congress. ■ The rule respecting the process, the persons on whom it is to be served, and i the time of service, are fixed. The course of the court on the failure *of the state to appear, after the due service of process, has been also prescribed.
 
 <-
 

 In this case, the
 
 sicbpcenar
 
 has been served, as is required by the rule. The complainant, according to the practice of the court, and according to the general order made in the case of
 
 Grayson
 
 v.
 
 Commonwealth of Virginia,
 
 has a right to proceed
 
 ex parte;
 
 and the court will make an order to that effect, that the cause may be prepared for a final hearing. If, upon being served with a copy of such order, the defendant shall still fail to appear, or to show cause to the contrary, this court will, as soon thereafter as the cause shall be prepared by the complainant, proceed to a final hearing a,nd decision thereof. But inasmuch as no final decree has been pronounced or judgment rendered in any suit heretofore instituted in this court against a state ; the question of proceeding to a final decree will be considered as not conclusively settled, until the cause shall come on to be heard in chief.
 

 Baldwin, Justice, did not concur in the opinion of the court, directing the order made in this cause.
 

 The
 
 subpoena
 
 in this cause having been returned executed, sixty days before the return-day thereof, and the defendant having failed to appear, it is, on motion of the complainant, decreed and ordered, that the complainant be at liberty to proceed
 
 ex parte:
 
 and it is further decreed and ordered, that unless the defendant, being served with a
 
 copy
 
 of this decree, sixty days before the ensuing August term of this court, shall appear on the second day of the next January term thereof, and answer the bill of the complainant, this court will proceed to hear the cause on the part of the complainant, and to decree on the matter of the said bill.