FERGUSON et al. v. BABCOCK LUMBER & LAND CO.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1918.)

No. 1589.

1. JUDGMENT ⬥489—COLLATERAL ATTACK—TITLE TO LAND—VALIDITY—JURISDICTION.

The general rule is that a judgment of a court purporting to adjudicate the title to land outside the limits of its territorial jurisdiction is void for lack of jurisdiction and will be treated as a nullity wherever encountered.

2. COURTS ⬥266—FEDERAL COURTS—JURISDICTION—TITLE TO LAND—CITIZENSHIP.

One claiming title to land under a grant from one state as to land situated therein may sue to recover it from citizens of another state claiming under a grant from that state, in the United States courts of the first state, and have the title finally adjudicated by that court.

3. JUDGMENT ⬥747(5)—FEDERAL COURTS—CONCLUSIVENESS—PARTIES.

Where the United States Circuit Court for the Eastern District of Tennessee had jurisdiction of a suit to quiet plaintiff's title to land alleged to be in Tennessee, and to cancel defendants' grants from North Carolina, its decree for complainant was conclusive of the rights of parties, and available to the complainant and to those claiming under him, against the defendants and those claiming under them.

4. JUDGMENT ⬥813—FULL FAITH AND CREDIT—DECREE.

Where the United States Circuit Court for the Eastern District of Tennessee had jurisdiction of a suit to quiet plaintiff's title to land alleged

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be in Tennessee, and to cancel defendants' grants from North Carolina, all other courts of the United States were bound to give full faith and credit to its decree.

5. EQUITY ⬤⇒418—TITLE TO LAND—DECREE PRO CONFESSO.
   On a bill in the United States Circuit Court for the Eastern District of Tennessee to quiet title to land, etc., a necessary party defendant, resident in North Carolina, who had been legally served and thereby required to meet the allegations that the land was in Tennessee, by his default admitted that the land was in that state, and brought himself within Act March 3, 1875, c. 137, § 8 (Comp. St. 1916, § 1039), so as to entitle the court to enter judgment against him.

6. JUDGMENT ⬤⇒651—DECREE PRO CONFESSO—EFFECT.
   A defendant was as fully bound by a duly rendered decree pro confesso against him as if he had resisted the suit.

7. JUDGMENT ⬤⇒813—FULL FAITH AND CREDIT—ERRONEOUS CONSTRUCTION—EVIDENCE.
   Evidence, however convincing, that the United States Circuit Court for the Eastern District of Tennessee reached an erroneous conclusion in a suit to quiet title to land, involving the question whether the land was in that state or in North Carolina, could not affect the credit and conclusiveness of its decree for complainant in any court to which it was presented.

8. JUDGMENT ⬤⇒660—CONCLUSIVENESS—VOID DECREE—EFFECT OF AFFIRMANCE.
   After a decree for complainant in the United States Circuit Court for the Eastern District of Tennessee, in a suit to quiet title to land involving the question of its location in Tennessee or in North Carolina, the Circuit Court's dismissal of a bill of review on the merits, affirmed on appeal to the Circuit Court of Appeals, and on certiorari by the United States Supreme Court, all after discovery of a plat showing that the land was in North Carolina, amounted to an affirmation of the validity of the Circuit Court's original decree.

9. JUDGMENT ⬤⇒660—CONCLUSIVENESS—VOID DECREE—EFFECT OF AFFIRMANCE.
   An adjudication of the United States Supreme Court in a suit between the two states that the land was in North Carolina, made pending the bill of review, did not impair the validity of that decree.

   Pritchard, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of North Carolina, at Asheville; James E. Boyd, Judge.

Bill to quiet title by the Babcock Lumber & Land Company against J. W. Ferguson and J. C. Blanchard. From a decree for complainant (243 Fed. 623), defendants appeal. Affirmed.

Mark W. Brown and F. A. Sondley, both of Asheville, N. C., for appellants.

James G. Merrimon, of Asheville, N. C., and John Franklin Shields, of Philadelphia, Pa. (John S. Adams, of Asheville, N. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The Babcock Lumber & Land Company filed its bill on January 20, 1917, in the District Court for the Western District of North Carolina to quiet its title to a tract of land on Slick Rock creek in that state against the claims of the defendants, J. W. Ferguson and J. C. Blanchard. The defendants answered, setting up title in themselves. The District Court held that the complainant had

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shown good title and decreed accordingly. The appeal mainly depends on the question whether a decree made in 1896 by the United States Circuit Court for the Eastern District of Tennessee in the case of Chas. Hebard against D. W. Belding and others, involving title to a large tract including the land in dispute, is binding on the defendants. The complainant in this case derives title from Hebard, the successful complainant in the Tennessee suit; the defendants derive title from R. L. Cooper, one of the defendants in that suit. If the decree there made was valid, then the complainant's title is good; if it is void for lack of jurisdiction of the Circuit Court for the Eastern District of Tennessee, the complainant has no title to the land under it against the defendants' claim of title.

In his bill filed in the Circuit Court for the Eastern District of Tennessee in January, 1896, Hebard, a resident of Michigan, alleged his ownership of a tract of 40,000 acres of land, under a grant from the state of Tennessee; the situation of the land in the state of Tennessee; the residence of some of the defendants in Ohio and New York, and the residence of the defendants R. L. Cooper and J. W. Cooper in North Carolina; the claim of the defendants to 8,000 acres of the land under grants from the state of North Carolina; the dispute between complainant and the defendants as to the location of the state line; and the purpose of the defendants to cut timber on the disputed land. The relief asked was a perpetual injunction forbidding defendants to cut the timber, the quieting of complainant's title by adjudging it to be valid against defendants' claims, and the cancellation of defendants' grants from the state of North Carolina as clouds on complainant's title. The defendant R. L. Cooper, an inhabitant of North Carolina, was personally served in that state, under the provisions of Act March 3, 1875, 18 Stat. 472, c. 137, § 8 (Comp. St. 1916, § 1039), but he failed to appear and a decree pro confesso was taken against him. Other defendants answered, denying complainant's title and setting up title in themselves. The sole question at issue in the cause was whether the land was in Tennessee or North Carolina: If in Tennessee, it belonged to the complainant, Hebard, under the grants from that state; if in North Carolina the grants from that state conferred title on the defendants. After a full hearing the Circuit Court found this issue in favor of the complainant, and on June 10, 1899, entered a decree accordingly. The Circuit Court of Appeals of the Sixth Circuit, after a careful review of the testimony, affirmed the decree. Belding v. Hebard, 103 Fed. 532, 43 C. C. A. 296.

[1, 2] The general rule that a judgment of a court purporting to adjudicate the title to land outside the limits of its territorial jurisdiction is void for lack of jurisdiction, and will be treated as a nullity wherever encountered, is well established. But it is also established, by authority which removes the question from the region of discussion, that one who claims title to the land under a grant from one state as land situated in that state, may sue to recover it from citizens of another state who claim under a grant from that other state, in the United States courts of the first state, and have the title finally adjudicated by that court. If this were not so, it would be impossible

for such claimant to have his title adjudicated. The right of the claimant under the Tennessee grants to have his title adjudicated, and the jurisdiction of the Circuit Court for the Eastern District of Tennessee to make the final adjudication, have been settled by the Supreme Court of the United States. In Rhode Island v. Massachusetts, 12 Pet. 657, 9 L. Ed. 1233, the court says:

"But for the other class of cases, 'controversies between citizens of different states,' the eleventh section of the Judiciary Act [Act Sept. 24, 1789, c. 20, 1 Stat. 73] makes provision; and the Circuit Courts, in their original, and this court, in its appellate, jurisdiction, have decided on the boundaries of the states, under whom the parties respectively claim, whether there has been a compact or not. The jurisdiction of the Circuit Court in such cases was distinctly and expressly asserted by this court as early as 1799, in Fowler v. Miller, 3 Dall. 411, 412 [1 L. Ed. 658]; s. p. [New Jersey v. New York] 5 Pet. 290 [8 L. Ed. 127]. In Handley's Lessee v. Anthony, the Circuit Court of Kentucky decided on the boundary between that state and Indiana, in an ejectment between these parties; and their judgment was affirmed by this court. 5 Wheat. 375 [5 L. Ed. 113; Robinson v. Campbell] 3 Wheat. 212–218 [4 L. Ed. 372]; s. p. Harcourt v. Gaillard, 12 Wheat. 523 [6 L. Ed. 716]. When the boundaries of states can be thus decided collaterally, in suits between individuals, we cannot, by any just rule of interpretation, declare that this court cannot adjudicate on the question of boundary, when it is presented directly in a controversy between two or more states, and is the only point in the cause." Ayers v. Polsdorfer, 187 U. S. 585, 23 Sup. Ct. 196, 47 L. Ed. 314; Stevenson v. Fain, 195 U. S. 165, 25 Sup. Ct. 6, 49 L. Ed. 142; Anderson v. Elliott, 101 Fed. 609, 41 C. C. A. 521 (Fourth Circuit).

[3-7] These decisions take the case entirely out of the general rule argued forcibly by appellant's counsel. The circuit court having jurisdiction, the decree was final and conclusive of the rights of the parties, and available to the complainant and all claiming under him against the defendants and all claiming under them; and all other courts of the United States were bound to give full faith and credit to it. R. L. Cooper, a necessary party, having been served in the manner required by law, and being required by the service to meet the allegations that the land was in Tennessee, by his default admitted that the land was in that state, and thus brought himself within the provisions of the act of 1875 before cited. He was as fully bound by the decree pro confesso against him as if he had resisted the suit. Thomson v. Wooster, 114 U. S. 104, 5 Sup. Ct. 788, 29 L. Ed. 105. Evidence, however convincing, that the court reached an erroneous conclusion—even a different conclusion by the same court or another court as to the state lines in a litigation between different parties, or even between the same parties with respect to other lands in like situation—could not affect the credit and conclusiveness of this decree in any court to which it was presented that the complainant's title to this land was good against the parties defendant.

In view of this rule, too well settled for discussion, we proceed to consider the subsequent developments showing conclusively that the Circuit Court for the Eastern District of Tennessee and the Circuit Court of Appeals erred in the finding of fact that the land was in Tennessee and passed under the grants from that state.

[8] Some years after the final decree of the Circuit Court of Appeals in favor of Hebard had been filed, the lost plat and the report

of the commissioners empowered to fix the boundary line between North Carolina and Tennessee, dated in 1821, were found in the archives of the state of Tennessee; this report and plat showed that the land adjudicated to belong to Hebard under the Tennessee grants was in fact on the North Carolina side of the line. On the basis of this report and plat as newly discovered evidence, an application for leave to file a bill of review was granted. One of the grounds of this application argued by counsel and mentioned in the dissenting opinion of Judge Severens was that the Circuit Court for the Eastern District of Tennessee had no jurisdiction, because the land was actually situated in North Carolina. Upon the hearing the Circuit Court made a decree dismissing the bill of review on the merits. This decree was affirmed on appeal by the Circuit Court of Appeals (194 Fed. 301, 114 C. C. A. 261), and on certiorari by the Supreme Court (Hopkins v. Hebard, 235 U. S. 287, 35 Sup. Ct. 26, 59 L. Ed. 232). The grounds of dismissal were that reconsideration of the merits on the newly discovered evidence was within the court's discretion, and that the force of the claim of the petitioners, grantees of the original defendants, to reopen the case, was overcome by the fact that they had purchased after the entry of the final judgments against their grantors, and that a third party had purchased from Hebard on the faith of the decree in his favor. Refusal to open the decree, either on the ground that newly discovered evidence would lead to a different result, or on the ground that it showed the decree to be a nullity for lack of jurisdiction, was a clear recognition of the jurisdiction of the Circuit Court for the Eastern District of Tennessee, and an affirmation of the validity of its decree by the Circuit Court of Appeals and the Supreme Court. It is true that R. L. Cooper had died before the petition for leave to file a bill of review was filed, and it is contended that his widow and two minor children, his heirs at law, from whom defendants claim, were not parties to the petition. We do not think it necessary to decide whether they were parties or not, for even if they were not, and the dismissal of the bill of review was not res adjudicata as to them, the decree of dismissal nevertheless has the force of highest judicial authority on the point now involved.

[9] In March, 1899, while the bill of review was pending, the state of North Carolina filed in the Supreme Court a bill against the state of Tennessee to settle the boundary. In that suit the Supreme Court, in the light of the report and plat of the commissioners above referred to, so adjudicated the true state line that the land now in controversy is on the North Carolina side. North Carolina v. Tennessee, 235 U. S. 1, 35 Sup. Ct. 8, 59 L. Ed. 97. This decision was made about 20 days before the decree of the court dismissing the bill of review and is reported in the same volume. If the Supreme Court had considered that its location of the land in North Carolina reached back to the suit of Hopkins v. Hebard, and withdrew the land from the jurisdiction of the court that decided that case, surely it would not have taken the pains to consider the merits of a bill to review a void judgment. It seems fair to infer that it would have

said there is nothing to review, since the decree is void for want of jurisdiction. In this language the court, on the contrary, asserts the validity of the decree attacked:

"Notwithstanding our conclusion in the proceeding between the states of North Carolina and Tennessee, where the established facts in respect to the location of the dividing line were for the most part the same as those disclosed in the record now before us, we think the decree of the Circuit Court of Appeals was right, and it is accordingly affirmed."

Had the decision of the Supreme Court in the litigation between North Carolina and Tennessee been made before the decree in Hopkins v. Hebard it would have been conclusive of the latter case. As it was made afterwards, it no more impairs the validity of the decree in that case than a like adjudication in a litigation between private parties. To hold that it could would lead to the impossible result that citizens of different states could settle their rights under grants from different states only in suits between the states, which they have no right to require the states to institute.

After the decision of the Supreme Court in the litigation between North Carolina and Tennessee that the land is in North Carolina, it was necessary for the complainant to file this bill in a court having jurisdiction of land in that state for the protection of its rights; but the decree adjudging valid the title under which it claims, having been rendered by a court of competent jurisdiction, must receive in the District Court for the Western District of North Carolina full faith and credit. These conclusions result in the affirmance of the judgment, and render unnecessary consideration of complainant's assertion of title by adverse possession and the effect of the grants from the state of North Carolina introduced by complainant, alleged to be prior in date to that under which defendants claim.

Affirmed.

PRITCHARD, Circuit Judge (dissenting). I cannot concur in the opinion of the majority of the court, wherein it is held (1) that the decree entered in the Circuit Court of the United States for the Eastern District of Tennessee affecting the title to lands wholly within the Western District of North Carolina, is not subject to collateral attack upon the ground that the District Court of Tennessee was without jurisdiction; and (2) that the complainant is entitled to recover on the merits of the case.

It is admitted by appellee, complainant below, that by virtue of a decision of the Supreme Court of the United States locating the boundary line between Tennessee and North Carolina, that these lands lie wholly within the Western district of North Carolina. Even if this admission had not been made, the complaint filed herein discloses the fact that the decree upon which it relies to recover was secured in a suit instituted in the Tennessee district, as I have stated. This allegation goes to the root of the whole matter and lays bare the weakness of the claim which complainant relies upon to sustain the jurisdiction of the court below.

It is well settled that the jurisdiction of a court is confined to its territorial limits, and where it appears that a court has attempted to

exercise jurisdiction for the purpose of determining title to property not within the limits of the district such judgment is a nullity and may be attacked collaterally. In the case of Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897, the second and third syllabi are in the following language:

"The record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist.

"Want of jurisdiction may be shown either as to the subject-matter of the person, or in proceedings in rem as to the thing."

In the case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, the Supreme Court said:

"The authority of every tribunal is necessarily restricted by the territorial limits of the state in which it is established. Any attempt to exercise authority beyond these limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as mere abuse."

The case of Thompson v. Whitman, supra, is very much in point. In that case a decree was entered for unlawfully taking clams in violation of a statute which provided for the forfeiture of a vessel in the county in which the seizure was made. There the court held that the decree could be attacked collaterally by showing that the seizure was not made in the county where the proceedings were instituted, notwithstanding the fact that the decree entered by the court below contained a recital in which it was stated that the seizure was made in the county where the offense was committed. That case, in my opinion, clearly sustains the rule which should control in the instant case. There the question presented was, as I have stated, as to whether a court of one county had jurisdiction to declare the forfeiture of a vessel when it was shown that the seizure was made in another. The court permitted the owner of the vessel to show that it was seized in another county, upon the theory that a court cannot exercise jurisdiction over property not within its territorial limits. It was just as essential to the jurisdiction of the Circuit Court for the Eastern District of Tennessee that the property in question should have been within the district where the suit was instituted, as it was in the case of Thompson v. Whitman, supra, that the proceedings for forfeiture should have been instituted in the county in which the seizure was made.

The case of Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, is also directly in point. The Supreme Court in that instance said:

"Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who had notice, either actually or by the thing condemned being first seized into the custody of the court. The Mary, 9 Cranch, 126, 144 [3 L. Ed. 678]; Hollingsworth v. Barbour, 4 Pet. 466, 475 [7 L. Ed. 922]; Pennoyer v. Neff, 95 U. S. 714, 727 [24 L. Ed. 565]. And such a judgment is wholly void, if a fact essential to the jurisdiction of the court did not exist. The jurisdiction of a foreign court of admiralty, for instance, in some cases, as observed by Chief Justice Marshall, 'unquestionably depends as well on the state of the thing, as on the constitu-

tion of the court. If by any means whatever a prize court should be induced to condemn, as prize of war, a vessel which was never captured, it could not be contended that this condemnation operated a change of property.' Rose v. Himely, 4 Cranch, 241, 269 [2 L. Ed. 608]. Upon the same principle, a decree condemning a vessel for unlawfully taking clams, in violation of a statute which authorized proceedings for her forfeiture in the county in which the seizure was made, was held by this court to be void, and not to, protect the officer making the seizure from a suit by the owner of the vessel, in which it was proved that the seizure was not made in the same county, although the decree of condemnation recited that it was. Thompson v. Whitman, 18 Wall. 457 [21 L. Ed. 897]."

If the contention of the complainant as to the law in case at bar be correct, it would render property rights of but little value and lead ·to interminable confusion. When we analyze the opinion of the majority of the court, we find that the defendants are denied property rights which are accorded other citizens similarly situated. One has only to understand the facts in order to appreciate the fallacy of such a proposition; it appearing that the defendant Cooper would be deprived of his property, while all other citizens in the district would enjoy the benefits of that provision of the Fourteenth amendment to the Constitution of the United States, which provides that no one shall be deprived of his property without due process of law.

"No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party." Scott v. McNeal, 154 U. S. 34, 46, 14 Sup. Ct. 1108, 1112 (38 L. Ed. 896).

As I have stated, it affirmatively appears in the complaint filed by the complainant in this action that the decree entered in the Tennessee court is not enforceable in this district, and therefore complainant comes into the District Court of the United States for the Western District of North Carolina with a decree which according to its own showing is inoperative, and asks that court to make the same effective .by entering a decree for complete relief. In other, words, it appears that the decree upon which it relies is not enforceable because it was, obtained in a court which could not exercise any power or control over the property by virtue of the fact that the property was situated wholly outside the territorial limits of the Circuit Court of the United States for the ·Eastern District of Tennessee at the time . that the suit in which such decree was entered was instituted.

In the case of Old Wayne Mutual Life Association of Indianapolis v. McDonough, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345, the Supreme Court said:

"No state can, by any tribunal or representative, render nugatory a provision of the supreme law. And if the conclusiveness of a judgment or decree in a court of one state is questioned in a court of another government, federal or state, it is open, under proper averments, to inquire whether the court rendering the decree or judgment had jurisdiction to render it. Such is the settled doctrine of this court. In the leading case of Thompson v. Whitman, 18 Wall. 457, 468 [21 L. Ed. 897], the whole question was fully examined in the light of the authorities. Mr. Justice Bradley, speaking for the court and delivering its unanimous judgment, stated the conclusion to be clear that the jurisdiction of a court rendering judgment in one state may be questioned in a collateral proceeding in another state, notwithstanding the averments in the record of the judgment itself. The court, among other things, said that

if it be once conceded that 'the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record. If that can be successfully done no statements contained therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as effectually to nullify the right of such inquiry. Recitals of this kind must be regarded like asseverations of good faith in a deed, which avail nothing if the instrument is shown to be fraudulent.' This decision was in harmony with previous decisions."

However, we are confronted at the threshold of this case with the well-established rule that a court cannot acquire jurisdiction in any case without having the parties properly before it, either by personal or substituted service. If the parties live in the district where the suit is instituted, then they may be properly served by the marshal of such district. But if, on the other hand, it should appear that one or more of the defendants, having an interest in the property, do not reside within the district, then said defendants may be made parties to a suit within the district by what is known as substituted service. It appears in this instance that the defendant did not reside in the Eastern district of Tennessee and was a citizen and resident of the Western district of North Carolina. Therefore it becomes important to determine as to whether the requirements of the statute, which authorizes substituted service, have been met. Not being a resident of the district where the suit was instituted the complainant sought to bring the defendant, Cooper, into court by substituted service in pursuance of section 57 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1102 [Comp. St. 1916, § 1039]), the material part of which is in the following language:

"When in any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district.  *   *   *"

A careful reading of this section shows conclusively that it only applies to cases where the property sought to be affected is within the

district where the suit is instituted. The condition under which service may be had upon a nonresident is to be found in the following provision:

"When in any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property *within the district where such suit is brought.* * * *" (Italics mine.)

Thus it will be seen that the right to have substituted service in a suit to remove cloud from title or other incumbrance is conditioned upon the fact that the real or personal property to be affected by the decree is "*within the district where such suit is brought.*" It is elementary that a judgment against a party upon whom no service has been had and who was not, therefore, a party to the suit, is a nullity. In this instance it clearly appears that the land in controversy is not now and was not at the institution of this suit in the district where the suit was brought.

This statute should be construed strictly. In the case of Non-Magnetic Watch Co. v. Association Horlogere Suisse of Geneva et al., 44 Fed. 6, Judge Lacombe, sitting in the Circuit Court, said:

"Statutes which undertake to give to courts jurisdiction over nonresidents, who do not come within the district for purposes either of residence or business, should not be enlarged by too liberal construction. * * *"

In the case of Citizens' Savings & Trust Co. v. Illinois Central Railroad Co., 205 U. S. 46, 27 Sup. Ct. 425, 51 L. Ed. 703, the question arose as to whether the property was within the district. Justice Harlan in that opinion italicized the words "*within the district where such suit is brought,*" thus clearly indicating that the power of the court to bring in a defendant residing in another district, under the statute, is based upon a condition precedent, to wit: That the property sought to be affected by the decree must be within the district. The second syllabus in the above-cited case is in the following language:

"A suit brought by owners of stock of a railroad company for the cancellation of deeds and leases under and by authority of which the properties of the company are held and managed is a suit within the meaning of section 8 of the Act of March 3, 1875, 18 Stat. 470, as one to remove incumbrances or clouds upon rent or personal property and local to the district and within the jurisdiction of the Circuit Court for the district in which the property is situated, without regard to the citizenship of defendants so long as diverse to that of the plaintiff, and foreign defendants not found can be brought in by order of the court subject to the condition prescribed by that section, that any adjudication affecting absent nonappearing defendants shall affect only such property within the districts as may be the subject of the suit and under the jurisdiction of the court."

Referring to the case of Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178, the court in the case of Citizens' Savings & Trust Co. v. Illinois Central Railroad Co., supra, said:

"In Mellen v. Moline Malleable Iron Works, 131 U. S. 352 [9 Sup. Ct. 781, 33 L. Ed. 178], we had occasion to examine the provisions of the act of 1875. A question there arose as to the jurisdiction of a Circuit Court of the United States to render a decree annulling a trust deed and chattel mortgage covering property within the district where the suit was brought, in which suit the defendants did not appear, but were proceeded against in the mode authorized

by the above act of 1875. This court said: 'The previous statute gave the above remedy only in suits "to enforce any legal or equitable lien or claim against real or personal property within the district where the suit is brought," while the act of 1875 gives it also in suits brought "to remove any incumbrance or lien or cloud upon the title to" such property. Rev. Stat. sec. 738 [Comp. St. 1916, § 1039]; 18 Stat. 472, c. 137, § 8. We are of opinion that the suit instituted by the Furnace Company against the Iron Works and others belonged to the class of suits last described. *The trust deed and chattel mortgage in question embraced specific property within the district in which the suit was brought.*' "

In the case of Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647, suit was brought in the Circuit Court of the United States for the Western District of Michigan by parties of states other than Michigan, against the Michigan mining corporation and certain individual defendants holding shares of stock in that corporation and being citizens and residents of the state of Massachusetts. The complainants alleged that they were the sole owners of certain shares of the stock of the corporation, the certificates for which were held by the Massachusetts defendants, and sought a decree removing the cloud upon their title to such shares and adjudging that they were entitled to them. The court held that the defendant citizens of Massachusetts were necessary parties to the suit, and the second syllabus is in the following language:

"That they could be proceeded against in respect of the stock in question in the mode and for the limited purposes indicated in the eighth section of the act of Congress of March 3, 1875 (18 Stat. 470, c. 137), which authorized proceedings by publication against absent defendants in any suit commenced in any Circuit Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title *to real or personal property within the district where such suit is brought.*" (Italics mine.)

The Supreme Court in that case sustained the contention of the complainant upon the ground that the property about which the suit was instituted was "within the district where such suit is brought."

In the case of Evans v. Charles Scribner's Sons et al. (C. C.) 58 Fed. 303, it was sought to bring a defendant into court and to have canceled as fraudulent a deed or conveyance to certain real estate near Atlanta, situated in the district where the suit was instituted. However, the other purpose of the bill was to set aside a transfer of certain insurance policies in the Northwestern Mutual Life Insurance Company on the life of complainant's deceased husband. The court, among other things, found that the insurance policies were not within the district where the suit was instituted, and therefore set aside the order for substituted service so far as it related to that part of the bill covering the insurance policies and sustained the order as to the real estate upon the ground that the real estate was situated within the district where the suit was instituted. In referring to this phase of the question the court said:

"Even if the insurance policies in issue could be said to be in any fair sense such personal property as is contemplated by the statute, the policies are in the state of New York and not in this district."

After the decree in question had been entered it appears that the Circuit Court of the United States for the Eastern District of Tennessee in 1907 refused to entertain a bill of review by which this suit was sought to be reopened for the introduction of newly discovered evidence, and upon consideration of the same the purported bill of review was dismissed. An appeal was taken from the order dismissing the bill of review to the Circuit Court of Appeals for the Sixth Circuit. Hopkins v. Hebard, 194 Fed. 309, 114 C. C. A. 261. That court affirmed the decree of the court below, and later, when the case went to the Supreme Court of the United States by certiorari, that court in turn affirmed the action of the Circuit Court of Appeals. Hopkins v. Hebard, 235 U. S. 287, 35 Sup. Ct. 26, 59 L. Ed. 232. The Circuit Court of Appeals in disposing of the case, among other things, said:

"What we do mean to decide is that in our opinion, taking into account not only the speculative purchase by appellants, but also the good-faith purchase by the Smoky Mountain Company, a case is not presented which appeals to the equitable discretion of the court to allow the review of a decree upon the ground alone of newly discovered evidence. We rest our decision solely upon this proposition."

Thus it will be seen that the Circuit Court of Appeals based their decision solely upon one question, to wit, as to whether or not the court below abused its discretion in dismissing the bill of review. That was the only question which was before the court. The statements of both the Circuit Court of Appeals and the Supreme Court, restricting their decision to the one point, shows very clearly that it was their purpose to avoid expressing their opinion as to any other question involved in the decree which might be raised in the future. There is no warrant for the contention that the Circuit Court of Appeals either directly or indirectly passed upon the question as to whether the Circuit Court for the Eastern District of Tennessee had jurisdiction in the first instance.

The Supreme Court quoted with approval that portion of the opinion cited above, in which that court stated: "We rest our decision solely upon this proposition." Thus it will be seen that the question of jurisdiction was not involved, nor was the question as to whether the attempt to have Cooper brought in by substituted service passed upon in any manner whatever. The purported bill of review was filed solely for the purpose of reopening the case, in order that an opportunity might be afforded, as I have stated, to offer newly discovered or additional evidence, and this motion was denied. The validity of the decree was not challenged in either of the courts in question, for the simple reason that there was no issue raised which afforded the court an opportunity to pass upon that question. Under these circumstances I cannot conceive upon what theory it may be said that defendants are estopped from raising the question of jurisdiction by anything decided in that case.

In the case of De Sollar v. Hanscome, 158 U. S. 221, 15 Sup. Ct. 818, 39 L. Ed. 956, the Supreme Court said:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that

question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject-matter of the action will be at large, open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined."

It is further insisted that the minor heirs of Cooper, but not his widow, were made parties to the bill of review. I fail to find anything in the record to justify this contention. In the first place it does not appear that a guardian was appointed to represent the minor heirs, nor does it appear that authority was given the heirs of Cooper to file the purported bill of review. While the bill of review refers to the heirs as being parties, the relief sought could not, in any sense of the word, apply to them.

R. L. Cooper never having been made a party to this suit, the only question that could affect the rights of his heirs would be the question of jurisdiction, and this question was not at issue. Further, the action on the part of counsel filing the bill of review was wholly unauthorized as it appears from the record. The making of these heirs parties to the proceedings at that time had no bearing whatever upon the question as to whether the court had jurisdiction. Counsel seems to have lost sight of the fact that the property sought to be affected by the decree was not within the district at the time the suit was instituted, nor was it within the district at the time of the alleged attempt to make these heirs parties to the suit.

In the opinion of the majority of the court it is also held that "one who claims title to land under grant from one state as land situated in that state may sue to recover from citizens of another state who claim land grant from that other state in the United States court of the first state," and the case of Rhode Island v. Massachusetts, 12 Pet. 657, 9 L. Ed. 1233, among others, is cited in support thereof. The point raised in the instant case, to wit, as to whether the court of one state has jurisdiction to pass upon title to land lying in another, was not involved in that case, but the question there relates exclusively to the powers conferred upon the federal court by the Constitution, and makes no reference whatever to the power of the federal or any other court to determine the title to property not situated within its territorial jurisdiction; the question there being as to whether the judicial power granted by the Constitution of the United States included the power of the federal courts to pass upon the location of state lines between two states, or that power had not been conferred by the Constitution, and therefore remained exclusively in the state. The court in referring to this phase of the question said:

"This court, in considering the Constitution as to the grants of powers to the United States and the restrictions upon the states, has ever held that an exception of any particular case presupposes that those which are not excepted are embraced within the grant of prohibition and have laid it down as a general rule that where no exception is made in terms, none will be

made by mere implication or construction. [Cohens v. Virginia] 6 Wheat. 378 [5 L. Ed. 257]; [Society for the Propagation of Gospel v. New Haven] 8 Wheat. 489, 490 [5 L. Ed. 662]; [Brown v. Maryland] 12 Wheat. 438 [6 L. Ed. 678]; [Gibbons v. Ogden] 9 Wheat. 206, 207, 216 [9 L. Ed. 23]. Then the only question is whether this case comes within the rule or presents an exception, according to the principles of construction adopted and acted on by this court, in cases involving the exposition of the constitutional laws of the United States."

The court not only did not announce the rule that the federal courts had jurisdiction to determine title to lands lying beyond its territorial limits, but, on the contrary, it specifically declared that:

"As this court is one of limited and special original jurisdiction, its action must be confined to the particular cases, controversies, and parties over which the constitutional laws have authorized it to act, any proceeding without the limits prescribed is coram non judice, and its action is a nullity."

This is in perfect harmony with the cases I have already cited. The other cases upon which the complainant relies, to wit, Town of Pawlet v. Clark et al., 9 Cranch, 292, 3 L. Ed. 735, and Colson et al. v. Lewis, 2 Wheat. 377, 4 L. Ed. 266, do not, in my opinion, sustain the contention of the complainant. These cases are referred to in the case of Stevenson v. Fain, 195 U. S. 165, 25 Sup. Ct. 6, 49 L. Ed. 142. There the court said:

"Two cases arising under the Judiciary Act of 1789 are cited, Town of Pawlet v. Clark et al., 9 Cranch, 292 [3 L. Ed. 735], decided March 10, 1815, and Colson et al. v. Lewis, 2 Wheat. 377 [4 L. Ed. 266], decided March 14, 1817. In Pawlet v. Clark, it appeared that the parties were citizens of Vermont and that the cases were pending in Circuit Court of the District of Vermont, but the reporter's statement does not show that the case was commenced in the state court. The record on file in this court, however, discloses that such was the fact, and that the cause was removed into the Circuit Court under the twelfth section. Colson et al. v. Lewis is not well reported. It was a bill in equity in which Lewis and others were complainants and Rawleigh Colson was the sole defendant. It came here on certificate, and the title was Lewis and others against Colson, and not as given in the report. The case stated shows that the case was removed from the state court into the Circuit Court of Kentucky, and that the complainants were citizens of Virginia, but the citizenship of the defendant was not disclosed. The headnote asserts that the parties were citizens of Kentucky, but the certificate of the clerk, as appears from our files, sets forth 'that it is stated in the bill that the defendant, Rawleigh Colson, is a citizen of the state of Virginia.' In both cases the parties were citizens of the same state and the cases were originally commenced in the state courts, and the Circuit Courts acquire jurisdiction by removal."

The syllabus in the case of Stevenson v. Fain, supra, is in the following language:

"The Circuit Courts do not possess original jurisdiction over controversies between citizens of different states claiming lands under grants of different states by reason of the subject-matter, and the decree of a Circuit Court of Appeals in such a case is final and an appeal to this court does not lie."

Thus it will be seen that the cases relied upon by the complainant cannot be said, in any sense of the word, to sustain the rule announced by this court. I think the case of Stevenson v. Fain, 195 U. S. 165, 25 Sup. Ct. 6, 49 L. Ed. 142, supra, is directly in point and conclusive as to this phase of the question. It should be borne in mind that in the Tennessee suit the complainant was a citizen and resident

of the state of Michigan and the defendants were citizens and residents of the states of Ohio, New York, and North Carolina. Therefore it clearly appears that none of the parties was a resident of the state of Tennessee, and they were not residents of the same state, as required by the Constitution. These facts distinguished this case from any of the cases relied upon to sustain the contention of the complainant.

In addition to what I have said as to the jurisdiction of the court, I am also of the opinion that the assignment of error as to what transpired in the trial of the case is sufficient to warrant reversal of the decree of the court below upon the merits of the case. However, I do not deem it necessary to enter into a discussion of that phase of the question, in view of what I have already said.