F. W. MYERS & CO., INC., ET AL. v. UNITED STATES

No. 4441.—Invoices dated Montreal, Canada, January 12, 1935, etc.
Certified January 12, 1935, etc.
Entered at Rouses Point, N. Y., January 8, 1935, etc.
Entry Nos. A–1620, A–1692, etc.

Second Division, Appellate Term

(Decided November 7, 1938)

*Strauss & Hedges* (*John Francis Strauss* of counsel) for the appellants.
*Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster,* special
attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are applications for a review of the decision (Reap. Dec. 4015) rendered by Presiding Judge McClelland wherein he found the dutiable values of certain skis and ski-poles imported from Canada through the port of Rouses Point, N. Y., during the period from December 29, 1934, to January 27, 1935, to be the appraised values thereof.

The appellants offered in evidence the testimony of Harvey E. Dodds, president of Harvey E. Dodds, Ltd., a corporation engaged in the manufacture of skis at Rouses Point, N. Y., and Montreal, Canada. He testified that he was personally familiar with the sales in Canada of merchandise similar to that involved herein; that the usual wholesale quantity there was approximately 100 pairs; that the usual discount allowed was 10 per centum; that on or about the respective dates of the instant shipments the usual wholesale prices in Canada at which said merchandise was sold by his corporation to all purchasers in the ordinary course of trade were as follows:

| Invoice Description | Per 100 pairs |
| --- | --- |
| Dome top ash skis | $3. 20 |
| Oval top birch skis | 2. 00 |
| Dome top hickory skis | 4. 70 |
| Standard special ski poles | . 85 |
| Kiddies ski poles | . 50 |
| Youths ski poles | . 72 |

plus the Canadian tax in each case where applicable.

He further testified that all of the invoice prices of said named articles are the usual wholesale prices at which the witness has sold similar skis and ski poles in Canada, with the exception of the standard special ski poles which were erroneously invoiced at 35 cents instead of at 85 cents, and which might sell at 90 cents, and the Kiddies ski poles erroneously invoiced at 55 cents instead of 50 cents.

On cross-examination he testified that he has kept himself informed by selling his goods in Canada as to the prices charged by other concerns for similar merchandise; that it is possible that some of such concerns might sell said merchandise at different prices and in different wholesale quantities; that his corporation does 80 per centum of the ski business in Canada; that it issues a pricelist (a copy of which was produced by the witness); that he recalled having issued a pricelist in which prices were stated for 500 pairs or over at $2 per pair and for 250 to 500 pairs at $2.25 per pair; that the reason for issuing this pricelist was to force buying in large quantities; that the scheme did not work and another list was substituted; that his corporation's pricelist was not circularized but was prepared for the use of its salesmen; that the new pricelist was prepared in the spring of 1934;

that the selling season starts in the early spring, sometimes as early as February, and continues until the winter season is over, the total period being eleven months; that nearly all of his corporation's products were sold at reduced prices; and that the witness made no concession to Bamberger & Co. or to R. H. Macy & Co. that it would not make to any customer in the Dominion of Canada.

The Government offered in evidence a special report signed by Frederic H. Bunting, customs agent at Buffalo, N. Y., dated April 29, 1935, to which is annexed a report made by the same agent, dated June 13, 1935, both documents being admitted in evidence as Exhibit 1 over the objection of counsel for the appellants.

Section 501 of the Tariff Act of 1930 provides in part as follows:

In finding such value affidavits and depositions of persons whose attendance cannot reasonably be had, price lists and catalogues, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. *Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.* [Italics ours.]

With reference to the admission in evidence of copies of official documents, the Supreme Court of the United States, in the case of *Smith* v. *United States*, 5 Pet. 291, 8 L. ed. 130, at page 133, said:

*Where copies are made evidence by statute, the mode of authentication required must be strictly pursued. The Legislature may establish new rules of evidence in derogation of the common law, but the judicial power is limited to the rule laid down.* [Italics ours.]

It is to be noted that the special agent's report, dated April 29, 1935, is a copy apparently made by the carbon process and purports to bear the signature of "Frederic H. Bunting" as the author of the report. But if said Bunting actually signed such report, no proof to that effect has been offered herein or that the name signed thereto is his signature.

On the other hand, the supplementary report, dated June 13, 1935, is a photostatic copy made by a person unknown, and the signature thereon is made or reproduced by the photographic process and is of course not the personal signature of the author of the report.

This would seem to place the two reports in different categories.

The question of the admissibility of such documents was the subject of a decision (Reap. Dec. 4416) rendered October 18, 1938, by the First Division of this court sitting in review of the decision (Reap. Dec. 4147) rendered by Evans, Judge, in the matter of reappraisements 116996–A, etc. It appears the First Division held that photostatic copies of reports similar to that dated June 13, 1935, herein, when not certified as required by law, were inadmissible; but that copies of a special agent's report made by the carbon process, but

signed by the author, the special agent, were in fact and in law duplicate originals and accordingly admissable in evidence.

Now, it may well be, and probably is, the fact that the carbon copy of the letter of April 29, 1935, above referred to, was actually signed by Special Agent Frederic H. Bunting. But, unfortunately, there is no proof to that effect or as to the authenticity and genuineness of such signature. While it has been held that where duplicates are reproduced by mechanical means, and each signed by the author of the document, all are duplicate originals, and that any of them may be introduced in evidence without accounting for the non-production of the others (*Pittsburgh C., C. & St. L. Ry. Co. v. Brown*, 98 N. E. 625), nevertheless it is incumbent upon the party offering said duplicate original to prove that it is in fact a duplicate original, and, of course, this necessarily implies that it be established that the signature is personally that of the author of the document. Contracts and other writings are frequently executed in duplicate, each party retaining one. All such duplicates and counterparts are regarded as originals. It follows, therefore, that either party may produce the duplicate which he has and prove it as an original copy without proving or producing the other. *Hubbard v. Russell*, 24 Barb. (N. Y.) 404; *Crossman v. Crossman*, 95 N. Y. 145; *Sarasohn v. Kamaiky*, 193 N. Y. 203, 86 N. E. 20.

Therefore, in view of the complete lack of proof that the carbon copy of said report of April 29, 1935, is in fact a duplicate original, and because the same is not certified according to law, we are constrained to hold that both the carbon copy and the photostatic copy appended thereto, together constituting Exhibit 1 and so admitted by the trial judge, are inadmissible as evidence and should be and hereby are excluded.

But it is only fair to state that these specific objections to the admissibility of said report (Exhibit 1), to wit, that it was not legally certified or proved to be a duplicate original, were neither mentioned in the brief of counsel for the plaintiff nor argued by him before this division of the court sitting in review.

Similarly, it should be stated that the oral proof submitted by the plaintiff might at one time have been regarded as *prima facie* evidence of what constituted a usual wholesale quantity of the articles involved herein. But such proof would no longer seem sufficient for that purpose in view of certain decisions rendered by the appellate court subsequent to the filing of these appeals. *Jenkins Brothers v. United States*, 25 C. C. P. A. 90, T. D. 49093; *United States v. Semon Bache & Co.*, 25 C. C. P. A. 387, T. D. 49446.

Therefore, in fairness to all parties and in the interest of justice we hereby remand these appeals to the trial court for a new trial.

Judgment will be rendered accordingly.